# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SERGIO A. MEDINA,

    Plaintiff,

v.

QUALITY LOAN SERVICE CORPORATION, *et al*.,

    Defendants.

Case No. 12-CV-00428-KJD-PAL

**ORDER**

    Before the Court is Plaintiff's Motion to Remand (#14). Defendant Quality Loan Service Corporation ("Defendant" or "Quality") filed a response in opposition (#15) to which Plaintiff replied (#17). Also before the Court is Defendant's Motion to Dismiss (#7). Plaintiff filed a response in opposition (#12) to which Defendant replied (#13). Plaintiff then filed a Motion to Allow Filing of Surreply and a Surreply (#16). Good cause being found, that motion (#16) is granted. On June 7, 2012, Defendants Mortgage Electronic Registration Systems, Inc. and Northstar Mortgage, LLC filed a Joinder (#34 and #35) to Quality's Motion to Dismiss (#7). No response in opposition has been received.

I. Background

Plaintiff Sergio A. Medina executed a Promisory Note (the "Note") on June 6, 2007 to purchase property at 198 Kachina Drive, Henderson, Nevada. The Note states that Plaintiff agrees to pay $360,000, plus interest, to Suntrust Mortgage, Inc. ("Suntrust"), the Lender. The Note also states that "the Lender may transfer this note." Medina and Suntrust also executed a Deed of Trust which names Suntrust as the Lender, Jackie Miller as the Trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as Suntrust's Nominee and the Beneficiary of the Deed of Trust. In October 2010, Medina allegedly defaulted on his loan.

In December 2010, MERS, acting as Suntrust's Nominee, assigned the Deed of Trust and Note to Nationstar Mortgage, LLC ("Nationstar"). In May 2011, Nationstar designated Quality as Trustee, replacing Jackie Miller. On June 6, 2011, Quality commenced foreclosure by recording a Notice of Default and Election to Sell. On February 22, 2012, Quality recorded a Notice of Trustee's Sale and set a sale date for March 12, 2012.

Five days before the sale was to take place, on March 7, 2012, Medina commenced this action in Nevada state court. In his complaint, Medina asserts two claims against defendants: (1) Wrongful Foreclosure in violation of NRS §107 et. seq.; and (2) Deceptive Trade Practices in violation of NRS § 598 et. seq. On March 14, 2012, Quality removed the case to this Court.

II. Motion to Remand

A. Legal Standard for Motion to Remand

Removal is authorized only by "the defendant or the defendants." See 28 U.S.C. §§ 1441, 1446. The Supreme Court has held that the language of the removal statute indicates Congress's intent to authorize removal by defendants only. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104-07 (1941). A defendant may remove any civil action to federal district court so long as original jurisdiction would lie in the court to which the case is removed. 28 U.S.C. § 1441(a). This Court has original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C.

§ 1332(a)(1). To determine whether the amount in controversy exceeds $75,000 in an action seeking declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Cohn v. Petsmart, 281 F.3d 837, 840 (9th Cir. 2002) (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). Where doubt regarding the right to removal exists, a case should be remanded to state court. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); See also 28 U.S.C. § 1447.

      B. Analysis

Plaintiff first argues that this case should be remanded because Quality should be considered the plaintiff for purposes of removal, which precludes it from removing the case. Plaintiff cites two United States Supreme Court decisions as a basis for this argument: Chicago, R.I. & P.R. Co. v. Stude, 346 U.S. 574 (1954), and Mason City & Fort Dodge R.R. Co. v. Boynton, 204 U.S. 570 (1907). In each of these cases, the Court realigned the parties because state law had classified the parties in a manner inconsistent with federal law. See Stude, 346 U.S. at 579-80; Boynton, 204 U.S. at 579-80. Here there is no conflict between state and federal law in terms of party classification, and there is no confusion as to who should be classified as the plaintiff. Medina instituted the case in state court and seeks various forms of relief. Therefore, Medina is the plaintiff. Accordingly, the Court declines to realign the parties and holds that Quality is properly classified as the defendant.

Plaintiff next argues that the amount in controversy fails to meet the $75,000 minimum. In his complaint, Plaintiff seeks monetary damages "in excess of $10,000" as well as declaratory relief. Because Plaintiff seeks declaratory relief, the Court takes into account the value of the object of the litigation: the $360,000 loan. See Petsmart, 281 F.3d at 840. The amount in controversy requirement is therefore met and the exercise of diversity jurisdiction is proper. Accordingly, the Court denies Plaintiff's Motion to Remand.

///

///

///

## III. Motion to Dismiss

### A. Legal Standard for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 680-81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 681. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 678.

### B. Deceptive Trade Practice

The Nevada Deceptive Trade Practices Act ("NDTPA") prohibits a seller from making false statements or misrepresentations about his or her goods or services, or failing to disclose material facts about his or her goods or services. See NRS § 598. The Courts of this District have held that the NDTPA does not apply to most real estate loan transactions. See, e.g., Reyna v. Wells Fargo Bank, N.A., 2011 WL 2690087, at *9 (D. Nev. July 11, 2011). Likewise, the Nevada Supreme Court has applied the NDTPA to a real estate transaction only once, in Betsinger v. D.R. Horton, Inc., 232 P.3d 433, 436 (Nev. 2010). In Betsinger, the plaintiff negotiated to buy a home from the defendant, a developer. Id. at 434. As part of the incentive to buy, the developer's financing division offered plaintiff a 4.6% interest rate on his mortgage. Id. Then, after the plaintiff paid a deposit and the contract was formed, the financing division switched the interest rate to 6.5%. Id. In response, the plaintiff cancelled the purchase contract, but the defendants failed to return his deposit. Id. The

4

Nevada Supreme Court upheld the jury's finding that the developer had engaged in deceptive trade practices. Id. at 436.

The facts of the present case are clearly distinguishable from those of Betsinger. Plaintiff is not purchasing a house, and Defendant is not selling one. There is no allegation that Defendant engaged in any bait-and-switch tactics. Plaintiff does not accuse Defendant of withholding a deposit. The only commonality between the two cases is that a mortgage was involved. Since the Betsinger exception does not apply, the NDTPA does not apply to the facts of this case. Accordingly, Defendant's motion to dismiss the Deceptive Trade Practices claim is granted.

C. Wrongful Foreclosure

NRS § 107.080 governs non-judicial foreclosure in Nevada. The statute provides that when a homeowner defaults, the "beneficiary, the successor in interest of the beneficiary or the trustee" may start the foreclosure process by executing and recording a Notice of Default and a Notice of Trustee's Sale. NRS § 107.080(2)(c). The "trustee or other person authorized to make the sale under the terms of the trust deed or transfer in trust" then conducts the sale. NRS § 107.080(4).

Plaintiff asserts that foreclosure was wrongful mainly because Quality has no authority to initiate foreclosure proceedings. Plaintiff argues that non-judicial foreclosure can only be conducted by the party that is entitled to enforce the note. To be able to enforce a note, Plaintiff contends, a party would have to be the current note holder, not simply the party in possession of the deed of trust. Plaintiff emphasizes that the two documents are separate and distinct, and asserts that Quality is not the current Note Holder. Furthermore, Plaintiff argues that MERS has no authority in this case to make assignments because it is merely the Nominee of the Lender, not the actual Beneficiary of the Deed of Trust. Plaintiff asserts that Quality, therefore, is also not the Trustee because Quality's appointment depends on MERS's ability to make assignments.

In Edelstein v. Bank of New York Mellon, as in this case, a prospective home owner executed a promissory note and deed of trust in order to purchase a home. 128 Nev. Adv. Op. 48, *2-3, 286 P.3d 249, ___ (2012). The note named New American Funding as the lender and note holder,

but the deed of trust named MERS as the beneficiary and nominee of the lender. Id. *2-3, 286 P.3d at ___. Subsequently, both the note and the deed of trust were transferred several times. Id. at *3, 286 P.3d at ___. Eventually, the prospective home owner defaulted on his payments and was given a notice of default and election to sell. Id. at *4, 286 P.3d at ___. The prospective homeowner chose to participate in Nevada's foreclosure mediation program, which ultimately concluded without resolving the foreclosure issue. Id. at *4, 286 P.3d at ___. The prospective homeowner then filed a petition for judicial review, arguing that the beneficiary of the note, assigned by MERS, had no authority to foreclose. Id. at *5, 286 P.3d at ___. The Nevada Supreme Court ultimately allowed the foreclosure, and in so doing clarified some important aspects of Nevada non-judicial foreclosure law. Id. at *25, 286 P.3d at ___.

     First, the court addressed whether it is possible to split a note from a deed of trust. In Nevada, it is necessary for the party initiating foreclosure, whether it is the note holder or its agent, to possess both the deed of trust and the promisory note. Id. at *7-8, 286 P.3d at ___. While these two documents are normally transferred together, it is possible for a promissory note and deed of trust to become separated when the parties agree to separate them. Id. at *19, 286 P.3d at ___. By designating one party as the beneficiary of the deed of trust and some other party as the lender and note holder, the parties effectively choose to split the two documents. Id., 286 P.3d at ___. However, the split is not irreparable. Id., 286 P.3d at ___. If, for example, the beneficiary assigns its beneficial interest in the deed of trust to the holder of the note, the documents are reunified. Id. at *20, 286 P.3d at ___. Likewise, if both the note holder and the beneficiary assign the note and deed of trust to a single party, the documents are reunified. See id. at *22, 286 P.3d at ___.

     The Court also made important holding regarding MERS. First, MERS, as the nominee of the lender, is the lender's agent and can transfer the note on behalf of the lender. Id. Second, separate from its role as an agent for the lender, MERS is also capable of being a valid beneficiary of a deed of trust. Id. at *20, 286 P.3d at ___.

Here, the Note names Suntrust as the Lender (#12, Exhibit 1), and the Deed of Trust names MERS as both the Beneficiary and Suntrust's Nominee, or agent (#7, Exhibit 1). Therefore, initially, the Note and Deed of Trust were split. However, the Corporate Assignment of Deed of Trust, the instrument used by MERS to assign the Deed of Trust to Nationstar, specifically states that MERS is acting "as Nominee for Suntrust Mortgage, Inc." and that it "does convey, grant, sell, assign, transfer and set over the described deed of trust *together with the certain note(s) described therein*" (#7, Exhibit 2) (emphasis added). The Deed of Trust specifically describes the Note on which Suntrust is listed as the Lender (#7, Exhibit 1). Accordingly, when Nationstar was assigned the Deed of Trust, it also became the Note Holder. The two documents were reunified, enabling Nationstar to enforce the Note and foreclose on the property. Nationstar then appointed Quality as its Trustee (#7, Exhibit 3), and Quality executed and recorded a Notice of Default and Election to Sell (#7, Exhibit 4).

The facts presented in the Complaint therefore fail to state a plausible claim for relief, as there are no facts to show any violation of NRS § 107.080. Accordingly, Defendant's motion to dismiss the Wrongful Foreclosure claim is granted.

III. Conclusion

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (#14) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (#7) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** against Plaintiff and for Defendants.

DATED this 25th day of October, 2012.

_____
Kent J. Dawson
United States District Judge

7